FILED'11 JUL 26 13:12USDC-ORM

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

MEDFORD DIVISION

| | | |
|---|---|---|
| DUANE L. HARPER, | ) | |
| | ) | |
| Plaintiff, | ) | CV 10-377-CL |
| | ) | |
| v. | ) | REPORT AND |
| | ) | RECOMMENDATION |
| MICHAEL J. ASTRUE, Commissioner of Social Security, | ) ) | |
| | ) | |
| Defendant. | ) | |

CLARKE, Magistrate Judge:

Plaintiff Duane Harper appeals the Commissioner's decision denying his applications for disability insurance benefits and supplemental security income payments under Titles II and XVI of the Social Security Act. The court has jurisdiction under 42 U.S.C. § 405(g). The Commissioner's decision should be affirmed.

1 - REPORT AND RECOMMENDATION

Harper alleged disability beginning April 7, 2003, due to back pain with numbness radiating into the legs. Admin. R. 92, 305. He satisfied the insured status requirements of the Social Security Act through December 31, 2004. *Id.* at 305. He must establish he was disabled on or before that date to prevail on his Title II claim. 42 U.S.C. § 423(a)(1)(A). *Tidwell v. Apfel,* 161 F.3d 599, 601 (9th Cir. 1998). There is no insured status prerequisite for his Title XVI claim. 42 U.S.C. § 1382(a).

The administrative law judge ("ALJ") applied the familiar five-step sequential disability determination process described in 20 C.F.R. §§ 404.1520 and 416.920. *Bowen v. Yuckert,* 482 U.S. 137, 140 (1987)(describing the decision-making process). As relevant to this appeal, the ALJ's findings from that process are as follows:

The ALJ found Harper satisfied the severity requirement of step two because his ability to work was more than minimally affected by degenerative disc disease of the lumbar spine, psoriatic arthritis, and obesity. Admin. R. 308. The ALJ found that, despite these impairments, Harper retained the residual functional capacity ("RFC") to perform light work limited to occasional postural activities such as climbing, bending, crawling, and so forth, occasional handling and fingering with the left hand, and frequent, but not constant, handling and fingering with the right hand. *Id.* at 308-09. The ALJ elicited testimony from a vocational expert ("VE") who said a person having Harper's vocational factors and RFC could perform the requirements of light, unskilled occupations such as a bakery worker, a laminating machine operator, and a marker. *Id.* at 316, 641-42. Based on this evidence, the ALJ concluded at step five that Harper had failed to prove he was disabled within the meaning of the Social Security Act. *Id.* at 316.

## STANDARD OF REVIEW

The court reviews the Commissioner's decision to ensure that proper legal standards were applied and the findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004). Under this standard of review, the court must uphold the Commissioner's findings of fact, provided they are supported by substantial evidence in the record as a whole, including inferences logically flowing from such evidence. *Tommasetti v. Astrue*, 553 F.3d 1035, 1040 (9th Cir. 2008); *Batson*, 359 F.3d at 1193; *Andrews v. Shalala,* 53 F.3d 1035, 1039-40 (9th Cir.1995); *Morgan v. Commissioner*, 169 F.3d 595, 599 (9th Cir. 1999).

## DISCUSSION

### I. Claims of Error

Harper contends the ALJ erred at step two of the decision-making process by omitting to designate some of his medically determinable impairments "severe" within the meaning of the regulations. He challenges the ALJ's RFC assessment on the grounds that the ALJ discounted his testimony, the statements of three lay witnesses, and the disability opinion of Jeffrey Bert, M.D. Harper contends the ALJ's step five conclusion, *viz.* that there are jobs in the economy which he can perform, was erroneously premised on hypothetical assumptions that did not accurately reflect all of his functional limitations.

### II. The Step Two Severity Requirement

Harper contends the ALJ erred at step two by failing to designate his foot pain at the fourth metatarsal "severe" within the meaning of the regulations. At step two, a claimant must meet what is known as the severity requirement. The claimant must show that he has any combination of

3 - REPORT AND RECOMMENDATION

impairments which causes more than minimal limitation in his ability to do basic work activities. 20 C.F.R. §§ 404.1520(c), 416.920(c). If the claimant fails to make this *de minimis* showing, he is not disabled within the meaning of the Social Security Act and the disability determination process ends without proceeding to the remaining steps. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii).

Here, the ALJ resolved step two in Harper's favor, finding his ability to work significantly affected by a combination of impairments. Admin. R. 308. The ALJ recognized that Harper had significant functional limitations which were identified in the RFC assessment described previously. After resolving step two in Harper's favor, the ALJ properly continued the decision-making process until reaching a determination at step five. Any error in failing to indicate additional impairments were separate and distinct severe impairments at step two did not prejudice Harper. *See Burch v. Barnhart*, 400 F.3d 676, 682 (9th Cir. 2005)(Any error in omitting an impairment from the severe impairments identified at step two was harmless where step two was resolved in claimant's favor); *Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007)(failure to list an impairment as severe at step two was harmless error where the ALJ considered the functional limitations posed by that impairment later in the decision).

Once a claimant has surmounted step two by meeting the severity requirement, the ALJ must take into consideration in the remaining steps of the decision all evidence of functional limitations imposed by medically determinable impairments, including any that were not identified as severe at step two. 20 C.F.R. §§ 404.1523, 416.923; Social Security Ruling ("SSR") 96-8p, 1996 WL 374184, *5. Accordingly, the ALJ was required to consider all the evidence of functional limitations from Harper's alleged foot and toe pain in assessing his RFC.

The ALJ considered all the evidence Harper presented related to functional limitations from foot pain. Admin. R. 311. Harper sustained a right great toe fracture in April 2004. *Id.* at 172. In July 2004, Harper saw Jorge Santibanez, M.D., with a complaint of pain between the third and fourth toes when walking. Admin. R. 171. Dr. Santibanez found pain and tenderness with palpation on the fourth and fifth toes. *Id.* Radiological images showed no fracture or dislocation, but there were spur-like formations in the distal phalanx of the big toe, an abnormality which usually has no clinical significance. *Id.* at 175. In an August 2004 followup, Harper reported no change, but the tenderness with palpation had moved to the great toe and plantar fascia. *Id.* at 171. Later that year, Harper told Dr. Santibanez he was working and doing physical activities and he continued to have back pain with associated numbness, but he did not mention foot or toe pain. *Id.* at 169-70. In December 2005, Harper saw Jon Davis, M.D., for right foot pain at the fourth metatarsal. Objective findings were minimal; the fourth toe appeared swollen on both feet, strength testing was symmetrical and normal, pain did not increase with range of motion testing or compression across the foot. Dr. Davis recommended an orthotic to relieve weight on the fourth metatarsal head. *Id.* at 222. Harper testified that he did not follow this recommendation because it did not make sense to him. *Id.* at 282. Notably, neither Dr. Santibanez nor Dr. Davis suggested functional limitations attributable to foot pain or restricted Harper's activities on that basis.

The foregoing evidence does not establish that Harper has any ongoing, persistent functional impairment from foot pain. Harper has not identified any evidence that the ALJ failed to consider regarding functional limitations from foot pain. He has therefore failed to satisfy his burden of proving functional impairment from this condition. *See Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1222 (9th Cir. 2009)(Burden of proof is on the claimant at step two).

### III. RFC Assessment

Harper contends the ALJ failed to assess his RFC accurately because he did not articulate a satisfactory explanation for discounting Harper's testimony, the lay witness statements, and the medical statement of Dr. Bert.

#### A. Credibility Determination

In his application documents, Harper alleged disability due to back pain and numbness radiating into his buttocks and legs as a result of an injury sustained in April 2003. Bending and sitting caused significant back pain. He tried to work after his back injury but back pain forced him to stop. Harper reported that he could not do household chores or yard work without severe pain, especially activities requiring him to bend. It was difficult for him to stand or sit in one place for long periods of time. Admin. R. 92, 108, 122, 126, 127-28, 130.

Harper testified at administrative hearings in January 2007 and November 2009. Harper testified that during the interim between hearings, he received new diagnoses of hepatitis C, psoriatic arthritis, and carpal tunnel syndrome. *Id.* at 623, 625. The arthritis makes him stiff and immobile and causes constant pain from head to toe. *Id.* at 624, 627. Harper testified that he cannot sit for long periods of time; he must get up and walk every half hour or so, but then he can sit back down. *Id.* at 630-31. He drops things constantly and suffers fatigue. *Id.* at 632. Harper testified that he cannot lift more weight than a cell phone without suffering severe pain. *Id.* at 644.

The ALJ accepted that Harper has degenerative disc disease with a history of neck injury and multiple surgeries, psoriatic arthritis, and obesity, which impose significant functional limitations reflected in the RFC assessment described previously. The ALJ found Harper's statements about the severity, persistence, and functional impact of his impairments not credible to the extent they

suggested functional limitations in excess of the RFC assessment. *Id.* at 311. Thus, the ALJ discounted Harper's assertion that he cannot lift more than the weight of a cell phone and his suggestion that he cannot sit, stand, or grasp sufficiently to complete a normal workday on a regular basis.

If a claimant produces objective medical evidence of an underlying impairment that could reasonably be expected to produce the symptoms alleged and no affirmative evidence of malingering exists, the ALJ must assess the credibility of the claimant regarding the severity of symptoms. *Smolen v. Chater*, 80 F3d 1273, 1281-82 (9th Cir 1996); *Cotton v. Bowen*, 799 F2d 1403, 1407-08 (9th Cir 1986); SSR 96-7p, 1996 WL 374186. Here, the ALJ found that Harper's medically determinable impairments could reasonably be expected to cause the symptoms he alleged, but that his statements about the severity, persistence, and limiting effects were not fully credible. Admin. R. 311.

An ALJ may discredit the claimant's testimony regarding the severity of symptoms by providing specific reasons for the credibility finding, supported by the evidence in the case record. SSR 96-7p, 1996 WL 374186, at *4. The ALJ must make findings that are "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995). The Court of Appeals for the Ninth Circuit imposes the additional requirement that the ALJ's reasons must be clear and convincing. *Carmickle v. Comm'r Soc. Sec. Admin.*, 533 F.3d 1155, 1160 (9th Cir. 2008); *Smolen*, 80 F.3d at 1283.

In assessing credibility, an ALJ must consider all the evidence in the case record, including the objective medical evidence, the claimant's treatment history, medical opinions, daily activities,

7 - REPORT AND RECOMMENDATION

work history, the observations of third parties with knowledge of the claimant's functional limitations, the observations of agency employees having interactions with the claimant, and any other evidence that bears on the consistency and veracity of the claimant's statements. SSR 96-7p, 1996 WL 374186, at *5; *Smolen*, 80 F.3d at 1284.

The ALJ's decision reflects that he considered all the evidence in the case record regarding these factors in assessing Harper's credibility. The ALJ discussed the medical evidence in detail and concluded the objective findings were routinely minimal. Admin. R. 311-13. This finding is supported by the record. In April 2003, when his disability allegedly began, Harper fell while working and injured his back. Kent Sharman, M.D., examined Harper and found moderate tenderness in the lumbar spine, a negative straight-leg-raise test, no abnormalities in reflexes or sensation, and a negative x-ray study of the lumbar spine. Dr. Sharman diagnosed only a contusion and recommended that Harper avoid heavy lifting and working on uneven ground. *Id.* at 219, 245. Later the same month, Dr. Sharman lifted his work restrictions and cleared Harper to return to his usual activities. *Id.* at 218.

In July 2004, Harper established care with Jorge Santibanez, M.D., complaining of a new development of back pain radiating into his neck. Harper attributed this pain to carrying a heavy chainsaw all day at work. Dr. Santibanez obtained normal findings regarding Harper's strength, reflexes, sensory examination, cerebellar function, and gait. The only positive objective findings were muscle spasm in the lumbosacral region and tenderness to palpation of the right big toe. *Id.* at 172. An MRI study showed only a slight disc bulge at L4-5 with no evidence of canal stenosis or disc herniation at any level. *Id.* at 173.

In November 2004, Harper reportedly continued to work and engage in physical activities and complained of worsening back pain. On physical examination, Dr. Santibanez again obtained generally normal objective findings except for tenderness on palpation and a positive straight-leg-raise. Dr. Santibanez endorsed temporary functional limitations of lifting no more than 40 pounds and only occasional stooping or bending. Dr. Santibanez did not expect Harper would have any permanent impairment. *Id.* at 169-70. This was the extent of the medical evidence and treatment history at the time Harper's insured status expired on December 31, 2004.

In March 2005, Harper established care with Jeffrey Bert, M.D. Dr. Bert obtained generally benign findings on physical examination, except Harper demonstrated limited range of motion in the lumbar spine and had some difficulty heel-to-toe walking. Harper's motor strength was full for all muscle groups in the lower extremities and his sensory examination was normal for L1 through S1. Dr. Bert recommended an epidural steroid injection. *Id.* at 178-80. Dr. Bert saw Harper again in August 2005 and recommended weight loss and exercise as well as an epidural injection. *Id.* at 186. In October 2005, Harper had not obtained an epidural injection, due to a lack of insurance coverage. Dr. Bert opined that Harper could not engage in work requiring him to stand for more than 30 minutes at a time, sit for more than an hour at a time, bend, stoop, or lift over 20 pounds. *Id.* at 224.

In January 2007, Harper established care with Walter Hunter, M.D., complaining of chronic back pain, psoriatic arthritis, heart palpitations, and hypertension. Harper brought in x-ray films which Dr. Hunter interpreted as showing a minimal disc bulge at L4-5. Harper had laboratory tests including a complete blood count, which did not reveal abnormalities. He also had a normal exercise treadmill EKG examination. Dr. Hunter noted Harper's hypertension was well controlled. *Id.* at 235-39, 246, 258-59.

In June 2007, Harper established care with Michael Pylman, M.D. On physical examination, Dr. Pylman found Harper had fair range of motion in all planes of the lumbar spine. Harper was able to walk forward and backward, stand on heels and toes, and perform one-legged deep knee bends. He had full motor strength in the lower extremities and a negative straight-leg-raise test. *Id.* at 496-98. In July 2007, Dr. Pylman administered an epidural steroid injection, which reportedly helped a great deal. *Id.* at 490, 495.

In February 2008, Harper underwent evaluation by William Maier, M.D., a rheumatologist. Dr. Maier found chronic synovitis in several joints of the hands and wrists, but Harper retained good range of motion of the elbows, shoulders, hips, and knees. He had some limitation on lateral rotation of the cervical spine. Dr. Maier diagnosed psoriatic arthritis and prescribed appropriate medication therapy. He opined Harper's chronic low back pain complaints were probably not related. *Id.* at 517-18.

The medical evidence supports the ALJ's conclusion that the findings of treatment providers were routinely minimal regarding functional limitations. The absence of medical findings is a proper factor in assessing credibility. *Burch*, 400 F.3d at 681; *Lingenfelter v. Astrue,* 504 F.3d 1028, 1040 (9th Cir. 2007).

This is further supported by the opinion evidence. The ALJ noted that medical opinions contradicted Harper's statements about the limiting effects of his impairments. Admin. R. 311. At about the alleged onset of disability, Dr. Sharman opined that Harper was doing well and appeared functional; he restricted Harper's work activities only from heavy lifting. *Id.* at 219. At about the expiration of Harper's insured status, Dr. Santibanez opined that Harper could lift up to 40 pounds and occasionally stoop or bend; he expected Harper to improve. *Id.* at 169. In October 2005, Dr.

10 - REPORT AND RECOMMENDATION

Bert opined Harper could lift up to 20 pounds. *Id.* at 224. In contrast, Harper testified that he could not lift more than the weight of a cell phone. *Id.* at 644. The opinion evidence reasonably supports an adverse inference as to the credibility of Harper's subjective claims about the limiting effects of him impairments.

The ALJ also relied on Harper's reported activity level and work history. *Id.* at 314. For more than a year after the alleged onset of his disability in April 2003, Harper continued to tell health care providers he was engaged in heavy work. For example, after receiving treatment for his back injury, Harper told Dr. Sharman he was ready to return to work without restrictions. *Id.* at 218. In July 2004, Harper reported carrying a heavy chainsaw around at work. *Id.* at 172. In November 2004, Harper told Dr. Santibanez he had been working and engaging in physical activities. *Id.* at 170. In December 2007, Harper reportedly helped a neighbor work on a driveway *Id.* at 236. In September 2009, Harper reported painting and caulking houses. *Id.* at 571. These reported activities reasonably suggest that Harper overstated the limiting effects of his impairments.

The ALJ noted inconsistencies in Harper's statements. *Id.* at 314. In his written function report, Harper claimed he could not do household chores or yard work. *Id.* at 127-28. In January 2007, Harper testified that he does yard work, takes care of an elderly neighbor's yard, and sands and refinishes small pieces of furniture. *Id.* at 283-84.

The ALJ considered the observations of third parties. He noted that Harper's lay witnesses observed that Harper engaged in some household chores and yard work, contrary to his initial function report. *Id.* at 135, 314. The ALJ noted that the agency interviewer observed Harper to sit still without difficulty throughout a prolonged interview, contrary to his alleged inability to sit for any length of time. *Id.* at 88, 309, 314. The inconsistencies within Harper's statements and between

his statements and his activities support an adverse inference as to credibility. *Light v. Soc. Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997).

In summary, the ALJ considered the available evidence relating to the proper factors for assessing credibility. Taken as a whole, his explanation is clear and convincing and his factual findings are supported by inferences reasonably drawn from substantial evidence in the record. Harper urges the court to accept a different interpretation of the evidence, but the ALJ was in a better position to evaluate his credibility than the court is. Even if the evidence could be rationally interpreted in a manner more favorable to Harper, the court must defer to the Commissioner's rational findings of fact. 42 U.S.C. § 405(g); *Batson,* 359 F.3d at 1193; *Andrews*, 53 F.3d at 1039-40. The ALJ's decision provides an adequate basis for the court to conclude that he did not discredit Harper's subjective statements arbitrarily. *Orteza*, 50 F.3d at 750; SSR 96-7p, 1996 WL 374186, at *4. Accordingly, the credibility determination should be upheld.

### B.     Lay Witness Statements

The record includes statements from three lay witnesses. An ALJ must consider the statements of non-medical sources who are in a position to observe a claimant's symptoms and daily activities. *Stout v. Comm'r, Soc. Sec. Admin.,* 454 F.3d 1050, 1053 (9th Cir. 2006). Such lay witnesses are competent to testify regarding the claimant's condition. *Dodrill v. Shalala,* 12 F.3d 915, 918 (9th Cir. 1993). Lay testimony as to the claimant's symptoms or how an impairment affects the ability to work cannot be disregarded without comment. *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996). If the ALJ wishes to discount lay witness testimony, he must give reasons that are germane to the witness. *Id.*; *Bayliss v. Barnhart*, 427 F.2d 1211, 1218 (9th Cir. 2005); *Lewis v. Apfel,* 236 F.3d 503, 511 (9th Cir. 2001).

In May 2005, Janet Harper provided a written function report indicating that Harper used to cook full meals, but after his back injury, could no longer stand long enough to do it. Admin. R. 135. In January 2007, Ms. Harper testified that she had seen Harper's legs buckle and collapse beneath him several times. *Id.* at 289-90. She testified that he begins to fidget after sitting in a car for about 30 minutes. *Id.* at 290. In November 2009, Ms. Harper testified that she had seen Harper experience dizzy spells which made him so weak that he just collapsed. *Id.* at 637-38.

In January 2007, Leona Stewart provided a statement indicating that Harper had tried to mow her lawn, but did not finish, reportedly due to back pain. *Id.* at 163. In January 2007, Debra House provided a written statement indicating she had observed Harper walking and he did not walk the way he did before his injury. She also observed that Harper must use his arms to lift himself out of a chair because his legs are weak. *Id.* at 164.

The ALJ found the lay witness statements somewhat credible. *Id.* at 314. He found the statements were not credible to the extent the witnesses repeated Harper's subjective statements to them, for the same reasons that Harper's subjective statements were not credible. *Id.* He found the lay witness statements credible with respect to the witnesses' objective observations, but that the lay witnesses did not describe objective observations that were inconsistent with the limitations in the RFC assessment. *Id.*

Ms. Harper's statement that Harper cannot stand long enough to cook a meal is inconsistent with the RFC assessment, which includes no limitation on standing. The ALJ could reasonably conclude that this statement is premised on Harper's subjective reporting instead of objective observation. Ms. Harper could objectively observe that Harper does not cook, but can only repeat Harper's report that the cause of this behavior is back pain. The ALJ's evaluation of Harper's

13 - REPORT AND RECOMMENDATION

credibility provides germane reasoning to discount the lay witness's repetition of his statements. *Valentine v. Comm'r of Soc. Sec. Admin.*, 574 F.3d 685, 694 (9th Cir. 2009).

Ms. Harper's observations of episodes in which Harper's legs buckled and he experienced dizzy spells are objective, but not clearly inconsistent with the RFC assessment. She did not indicate the frequency, cause, or circumstances in which these episodes occurred. They have not been persistent symptoms mentioned in the medical evidence or in other witness statements. Accordingly, although credible, they do not support persistent functional limitations in addition to the limitations in the RFC assessment. Similarly, the credible statements of Ms. Stewart, that Harper tried to mow her lawn but did not finish, and Ms. House, that Harper does not walk the same as he did before his back injury, are insufficient to establish functional impairments in addition to the RFC assessment. The ALJ was not required to provide reasons for discrediting these statements because he found them credible.

The ALJ's decision demonstrates that he did not ignore or arbitrarily discount the lay witness statements. *Nguyen*, 100 F.3d at 1467; *Bayliss*, 427 F.2d at 1218; *Lewis*, 236 F.3d at 511. The ALJ's evaluation of the lay witness statements should be upheld.

### C. Medical Source Statement

Harper did not present specific argument in his opening brief in support of the claim that the ALJ improperly evaluated the medical evidence. His arguments were presented first in the reply brief, after the Commissioner had responded to the arguments in his opening brief. This practice puts the opposing party at an unfair disadvantage and is strongly discouraged. Accordingly, issues not specifically argued in the opening brief ordinarily should not be addressed by the court.

*Carmickle*, 533 F.3d at 1161, n.2. Harper's arguments are addressed here for the benefit of the judge who will review this Report and Recommendation.

Harper contends the ALJ improperly rejected the medical source statement of Dr. Bert. As described previously, Harper established care with Dr. Bert in March 2005. Dr. Bert obtained generally benign findings except for limitations in lumbar range of motion and observations that Harper rose from a seated position slowly, and walked heel-to-toe with difficulty. Admin. R. 179. At the time of this initial evaluation, Dr. Bert wrote a note indicating "Mr. Harper has been and will be off work for 12 months at least." *Id.* at 177. In October 2005, Dr. Bert's findings had not changed and he opined that Harper could not engage in work requiring him to stand more than 30 minutes at a time, sit for more than an hour at a time, bend, stoop, or lift over 20 pounds. *Id.* at 224. The ALJ gave some weight to Dr. Bert's findings and opinion, but discounted his conclusion that Harper would be unable to sustain work activity. *Id.* at 314.

An ALJ can reject a treating physician's opinion in favor of the conflicting opinion of another treating or examining physician, if the ALJ makes "findings setting forth specific, legitimate reasons for doing so that are based on substantial evidence in the record." *Thomas v. Barnhart*, 278 F.3d 947, 956-57 (9th Cir. 2002), quoting *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989). If the treating physician's opinion is not contradicted by another physician, then the ALJ may reject it only for clear and convincing reasons. *Id.* Here the ALJ gave greater weight to the findings and opinions Dr. Santibanez, a family nurse practitioner, and the agency reviewing medical experts. These sources opined that Harper could sustain work activity within appropriate limitations consistent with the RFC assessment. Admin. R. 314. Accordingly, the court reviews for specific, legitimate reasons based on substantial evidence.

The ALJ observed that Dr. Bert's objective findings were not remarkable, and were consistent with those of Dr. Santibanez and others who opined that Harper would be capable of work with appropriate limitations. *Id.* Dr. Bert did not provide any objective support for his vocational conclusion. An ALJ can reject a physician's opinion that is conclusory and unsupported by clinical findings. *Meanal v. Apfel*, 172 F.3d 1111, 1117 (9th Cir. 1999). Under circumstances where there is no objective evidence to support a doctor's conclusion, it is reasonable to assume that the conclusion is based on subjective statements of the patient. An ALJ is entitled to reject a treating physician's opinion that is premised primarily on subjective complaints that the ALJ properly finds unreliable. *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001).

The ALJ observed that Dr. Bert issued his disability note without the benefit of reviewing the entire medical record. Admin. R. 314. In this regard, the agency reviewing physicians and Dr. Santibanez were in a better position to evaluate Harper's long term condition and functional status. The ALJ's reasoning is specific and legitimate and supported by the record. Accordingly, his explanation for discounting Dr. Bert's disability note should be upheld.

## IV.  Vocational Evidence

At step five of the decision-making process, the Commissioner must show that jobs exist in the national economy that a person having the vocational factors and functional limitations of the claimant can perform. *Yuckert*, 482 U.S. at 141-42; 20 C.F.R. §§ 404.1520(e), (f), 416.920(e), (f). The ALJ can satisfy this burden by eliciting the testimony of a VE with a hypothetical question that sets forth all the limitations of the claimant. *Andrews*, 53 F3d at 1043.

Here, the ALJ elicited testimony from the VE based on hypothetical questions reflecting the limitations in his assessment of Harper's RFC. Admin. R. 641-46. The VE testified that a

16 - REPORT AND RECOMMENDATION

hypothetical person with Harper's age, education, work experience, and RFC could perform the activities required in three light, unskilled occupations representing several hundred thousand jobs in the national economy. *Id.* at 641-42.

Harper contends the ALJ elicited the VE's testimony with hypothetical assumptions that did not reflect limitations from foot pain, limitations based on the lay witness statements, or limitations from Dr. Bert's disability note. The ALJ evaluated the evidence properly and concluded these limitations were not supported. The ALJ was not required to incorporate limitations he found unsupported by the evidence. *Batson*, 359 F.3d at 1197-98; *Osenbrock v. Apfel*, 240 F3d 1157, 1164-65 (9th Cir 2001).

## RECOMMENDATION

The ALJ's conclusion that Harper failed to prove he was disabled within the meaning of the Social Security Act is based on proper legal standards and supported by substantial evidence in the record as a whole. The Commissioner's decision that Harper is not entitled to disability insurance benefits or supplemental security income under Titles II and XVI of the Social Security Act should be affirmed.

*This recommendation is not an order that is immediately appealable to the Ninth Circuit Court of Appeals.* Any notice of appeal pursuant to Rule 4(a)(1), Federal Rules of Appellate Procedure, should not be filed until entry of the district court's judgment or appealable order.

The Report and Recommendation will be referred to a district judge. *Objections to this Report and Recommendation, if any, are due by August 15, 2011. If objections are filed, any response to the objections are due by September 1, 2011,* see Federal Rules of Civil Procedure 72 and 6.

Failure to timely file objections to any factual determinations of the Magistrate Judge will be considered a waiver of a party's right to de novo consideration of the factual issues and will constitute a waiver of a party's right to appellate review of the findings of fact in an order or judgment entered pursuant to the Magistrate Judge's recommendation.

DATED this 26 day of July, 2011.

_____
Mark D. Clarke
United States Magistrate Judge